971 So.2d 763 (2007)
In re AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR  ADVERTISING.
No. SC05-2194.
Supreme Court of Florida.
December 20, 2007.
John F. Harkness, Jr., Executive Director, Tallahassee, Florida, Henry M. Coxe, III, President, Jacksonville, Florida, Alan B. Bookman, Past President, Pensacola, Florida, Kenneth L. Marvin, Director of Lawyer Regulation, Mary Ellen Bateman, Interim Division Director, John Anthony Boggs, Director, Attorney Consumer Assistance Program, Elizabeth C. Tarbert, Ethics Counsel, Charles Chobee Ebbets, Chair, Special Committee on Website Advertising Rules, Kelly Overstreet Johnson of Broad and Cassel, and Barry S. Richard of Greenberg Traurig, P.A., The Florida Bar, Tallahassee, Florida, for Petitioner.
Bill Wagner of Wagner, Vaughan, McLaughlin and Brennan, P.A., Tampa, Florida, W.F. "Casey" Ebsary, Jr., Tampa, Florida, Timothy P. Chinaris, Montgomery, Alabama, Responding with comments.
PER CURIAM.
The Florida Bar petitions this Court to consider proposed amendments to chapter 4 of the Rules Regulating the Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.
The proposals are the result of a study by the Bar's Advertising Task Force 2004 (Task Force) and affect subchapter 4-7 of the rules. The Task Force, which was appointed in February 2004, was charged by the Bar with the following mission:
The Advertising Task Force 2004 is charged with reviewing the attorney advertising rules and recommending changes to the rules if deemed necessary, including any changes to clarify the meaning of the rules and provide notice to Florida Bar members of the rules' requirements. Included within this charge is an analysis of the advertising filing and review requirement, including consideration of mandatory review prior to dissemination of advertisements.
The Task Force held several meetings, solicited comments from numerous sources, and consulted various Bar sections. The Task Force published information and draft proposals in The Florida Bar News and on The Florida Bar's website. Thereafter, the Task Force submitted its recommendations to the Board of Governors of The Florida Bar (Board).
Although the Board adopted the majority of the recommendations, two significant areas where the Board declined to adopt the Task Force's recommendations were proposals dealing with (1) exempting websites from regulation (the Board seeks regulation of websites); and (2) when to review television and radio advertisements (the Board believes review should occur before dissemination). Thus, some of the Task Force's recommendations were modified by the Board.
The proposals were published for comment in the August 1, 2005, edition of The Florida Bar News. The Bar did not receive any comments in response to the official notice. Further, in the notice, the Bar directed interested parties to file their comments directly with the Court. Thereafter, on December 14, 2005, the Bar filed the proposals with the Court. The Court received three comments.
The Bar proposes amendments to rules 4-7.1 (General); 4-7.2 (Communications Concerning a Lawyer's Services); 4-7.3 (Advertisements in the Public Print Media); *764 4-7.4 (Direct Contact With Prospective Clients); 4-7.5 (Advertisements in the Electronic Media Other Than Computer-Accessed Communications); 4-7.6 (Computer-Accessed Communications); 4-7.7 (Evaluation of Advertisements); 4-7.8 (Exemptions From the Filing and Review Requirement); 4-7.10 (Firm Names and Letterhead); and 4-7.11 (Lawyer Referral Services). Further, the Bar proposes the deletion of rule 4-7.9 (Information About a Lawyer's Services Provided Upon Request).
After considering the comments filed and holding oral argument, the Court adopts The Florida Bar's proposals, except as follows.
The Bar proposed several amendments to rule 4-7.1 (General), including adding subdivisions that would exempt certain areas from the advertising rules. The proposed exemptions included, along with other areas, communications with family members, communications between lawyers, and communications with current and former clients. We adopt the exemption in respect to communications with family members. We request further information from the Bar as to why communications between lawyers, and communications with current and former clients, should be exempted from the advertising rules, including any research or evidence supporting such exemptions. We defer adoption of those two exemptions at this time.
For similar reasons, the Court deletes a portion of the proposed comment to rule 4-7.4 (Direct Contact With Prospective Clients). The proposal would have added language to the comment that would have stated that the advertising rules did not apply to certain "prior professional relationships."
Next, current rule 4-7.5 requires a nonlawyer spokesperson who speaks on behalf of a lawyer or law firm to comply with certain requirements. The spokesperson must identify himself or herself as a spokesperson. Also, the spokesperson must disclose that he or she is not an attorney practicing with the lawyer or firm. The proposal for rule 4-7.5 would change the rule regarding affirmative disclosures by spokespersons. Instead of following the established requirements, the proposal would require an affirmative disclosure that a nonlawyer spokesperson is being used only when it is not apparent "from the context of the advertisement that the spokesperson is not a lawyer." In comparison to the proposal, the established requirements are consistently unambiguous in any advertising situation, simple to apply, and, thus, provide greater protection for the public. Therefore, the Court does not adopt the proposal.
Existing rule 4-7.6 (Computer-Accessed Communications) governs computer-accessed communications such as websites and electronic mail. The proposal would make several changes to the rule. However, the Court notes that the Board has appointed a special committee to review issues regarding websites and Internet communications. The special committee is charged with making recommendations to the Board if appropriate. Thus, it is not efficient or sound for the Court to address the regulation of Internet advertising at this time, while the special committee is studying these very issues. Accordingly, the Court does not adopt the proposal for rule 4-7.6. The Court will consider the regulation of Internet communications when the Bar files the report of the special committee.[1]
*765 Further, the Court requests that the Bar undertake an additional and contemporary study of lawyer advertising, which shall include public evaluation and comments about lawyer advertising, as recommended by Mr. Bill Wagner in his written and oral comments to the Court.
Also, the Bar proposed amendments to rule 4-7.8 (Exemptions From the Filing and Review Requirement), which would have included deletion of existing subdivision (d) (a communication mailed only to existing clients, former clients, or other lawyers is exempt from the filing requirements of rule 4-7.7). However, the Bar subsequently filed a motion requesting that the Court retain subdivision (d) in the rules, while the Bar studied issues raised by related rule 4-7.1 (General). Thus, in light of related rule 4-7.1, we modify the proposal to maintain existing subdivision (d) in rule 4-7.8.
Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The comments are included for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective on February 1, 2008, at 12:01 a.m.
It is so ordered.
WELLS, PARIENTE, QUINCE, and CANTERO, JJ., concur.
LEWIS, C.J., concurs in part and dissents in part with an opinion.
BELL, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
LEWIS, C.J., concurring in part and dissenting in part.
Although I agree with most of the new amendments, I dissent with regard to the advertising pandering of the new designation termed "expert." It is this Court's obligation and duty to prescribe standards of professionalism and ethical conduct for attorneys who are privileged to practice law in the State of Florida. See art. V, § 15, Fla. Const.; R. Regulating Fla. Bar 3-1.2. However, when we abdicate that duty by allowing Florida's attorneys to foist artfully crafted, bar-sanctioned, advertising-based deception upon the lay public, I must dissent. I, therefore, express my disagreement with the decisions of the majority in In re Amendments to the Rules Regulating the Florida Bar, SC06-736, ___ So.2d ___, 2007 WL 4440381 (Fla. Dec. 20, 2007), and the instant case, to the extent that these decisions authorize board-certified attorneys to denominate and advertise themselves as "experts." We often voice concern with regard to professionalism and the declining respect for the legal system, but we fail to follow our own words with corresponding action. In my view, a very significant contribution to this eroding respect can be traced directly to the shift from a professional model to an economic model, which includes progressively-escalating advertising gimmicks. Today the majority adds another bullet to that economic arsenal.
My analysis consists of four observations. First, under the commercial-speech doctrine, this Court remains free to restrain deceptive or misleading attorney advertising. Second, "specialist" and "expert" *766 are not synonymous; in fact, they are qualitatively different. Furthermore, claims of "expert" status are inherently misleading. Third, the "expert" amendments have "flown under the radar" and have not been adequately or appropriately debated or briefed. Fourth and finally, my view is consistent with both the majority approach across the country, and with Florida's regulation of another group of certified specialists  board-certified physicians.
THE STATES RETAIN THE ABILITY TO PROHIBIT MISLEADING COMMERCIAL SPEECH.
Since the United States Supreme Court decided Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the states have understood that attorney advertising is a form of commercial speech that is entitled to some First Amendment protection. See, e.g., Fla. Bar v. Herrick, 571 So.2d 1303, 1305 (Fla.1990). However, the High Court has made certain to clearly emphasize that the states remain free to regulate and prohibit false, deceptive, or misleading commercial speech, especially when used in the context of professional-service advertisements: "Physicians and lawyers . . . do not dispense standardized products; they render professional services of almost infinite variety and nature, with the consequent enhanced possibility for confusion and deception if they were to undertake certain kinds of advertising." Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, 425 U.S. 748, 773 n. 25, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (emphasis supplied); see also Bates, 433 U.S. at 379, 97 S.Ct. 2691 ("Because the public lacks sophistication in legal matters, it may be particularly susceptible to misleading or deceptive advertising by lawyers. After-the-fact action by the consumer lured by such advertising may not provide a realistic restraint because of the inability of the layman to assess whether the service he has received meets professional standards." (emphasis supplied)).
It is axiomatic that "[a]dvertising that is false, deceptive, or misleading . . . is subject to restraint." Bates, 433 U.S. at 383, 97 S.Ct. 2691; see also Herrick, 571 So.2d at 1305. Moreover, the Supreme Court has held that its multi-part commercial-speech framework from Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), does not apply if the advertising at issue is misleading:
Under Central Hudson, the government may freely regulate commercial speech that concerns unlawful activity or is misleading. Commercial speech that falls into neither of those categories . . . may be regulated if the government satisfies a test consisting of three related prongs: First, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be narrowly drawn.
Fla. Bar v. Went For It, Inc., 515 U.S. 618, 623-24, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (emphasis supplied) (citation and quotation marks omitted). Further, the Justices presented much of this same analysis in the plurality decision of Peel v. Attorney Registration & Disciplinary Commission of Illinois, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), which held that the Illinois Commission's discipline of an attorney for truthfully advertising his trial-specialist certification violated the First Amendment. See id. at 99-110, 110 S.Ct. 2281; see also id. at 113-14, 110 S.Ct. 2281 (Marshall, J., concurring in the judgment). There was, however, no majority opinion in Peel. Where this is the *767 case, the Supreme Court has held that the true holding of the case is "that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).
In Peel, the narrowest concurrence was that of Justice Marshall, joined by Justice Brennan. Therein, Justice Marshall stated that even attorney-specialist certifications are "potentially misleading" because specialist certifications, in the absence of proper explanation, imply that certified lawyers are necessarily more adept in the certified field than noncertified lawyers. See Peel, 496 U.S. at 113-14, 110 S.Ct. 2281 (Marshall, J., concurring in the judgment). Florida unequivocally endorses the use of properly obtained and explained attorney-specialization certifications. See R. Regulating Fla. Bar 4-7.2(c)(6), 6-1.2 (prior versions).[2] The telling truth revealed in Peel, however, is that even attorney specialization  where not properly explained  can be misleading for the public. See 496 U.S. at 113-14, 110 S.Ct. 2281 (Marshall, J., concurring in the judgment). As explained below, while attorney "specialization" can be potentially misleading, attorneys' claims of "expert" status are inherently misleading, and this Court should, therefore, prohibit the use of this misleading moniker. In my view, this is also a breach of the trust advanced in the 1970s and 1980s to secure approval of attorney "specialty" designations in Florida, and constitutes pandering to advertising at the lowest level.[3]
"EXPERT" AND "SPECIALIST" STATUS ARE QUALITATIVELY DIFFERENT, AND THE FORMER IS INHERENTLY MISLEADING. MOREOVER, THESE "EXPERT" AMENDMENTS HAVE NOT BEEN PROPERLY DEBATED.
Sellers of goods and services use commercial advertising to increase sales and to make a name for themselves in the applicable market. See Fla. Bar v. Pape, 918 So.2d 240, 247 (Fla.2005). The consuming public thus becomes their target audience, and "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides." Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (emphasis supplied). Therefore, where the advertising at issue is misleading and provides little, if any, valuable information to the consuming public, that advertising must be scrupulously examined and controlled.
Attorney "expert" status exemplifies this very type of misleading, useless advertising. *768 Florida has had and secured an attorney-specialization program  based on specified representations and promised limitations  for decades, and has readily permitted attorneys to advertise their certified status as long as they have complied with the relevant rules of professional conduct. See R. Regulating Fla. Bar 4-7.2(c)(6), 6-1.2 (prior versions); Fla.Code of Prof'l Responsibility DR 2-105 (the Code of Professional Responsibility ceased to govern attorneys in Florida as of January 1, 1987); see also Herrick, 571 So.2d at 1306-07 (holding that The Florida Bar's discipline of an attorney for claiming specialization status without having complied with Florida's rules of professional conduct did not violate the First Amendment). The decision of the majority to allow these attorneys to publicize their status with ever-increasing hyperbole does not change the fact that they were previously permitted to only claim certified specializations, which were adequate descriptors without the addition of the useless, misleading, and qualitatively different appellation "expert." Substituting "expert" status for "specialist" status accomplishes nothing apart from increasing attorneys' capacity to deceive the consuming public, regardless of whether their deception is intentional or unintentional.
The United States Supreme Court has stated that "because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising." Bates, 433 U.S. at 383, 97 S.Ct. 2691. Therefore, in the realm of legal-service advertising, this Court has a heightened responsibility to protect the lay public from potentially deceptive statements and claims: "[T]he public and private benefits from commercial speech derive from confidence in its accuracy and reliability. Thus, the leeway for untruthful or misleading expression that has been allowed in other contexts has little force in the commercial arena." Id. (emphasis supplied). Where the potential interpretation and perspective of the public is concerned, one must focus on the plain meaning of the communication at issue. To that end, "[o]ne looks to the dictionary for the plain and ordinary meaning of words." Garcia v. Fed. Ins. Co., 969 So.2d 288, 292 (Fla.2007) (quoting Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999)) (interpreting the plain meaning of the words used in an insurance policy).
According to a widely used dictionary, "specialist" and "expert" are not at all synonymous terms. Merriam Webster's Collegiate Dictionary supplies two germane definitions for the term "expert": The first definition is a person "having, involving, or displaying special skill or knowledge derived from training or experience"; however, the second definition is "one with the special skill or knowledge representing mastery of a particular subject." Merriam Webster's Collegiate Dictionary 409 (10th ed.1993) (emphasis supplied). In contrast, that same source defines "specialist" as "one who specializes in a particular occupation, practice, or branch of learning." Merriam Webster's Collegiate Dictionary 1128 (10th ed.1993). Merely focusing upon a particular "branch of learning" is not the same exercise as obtaining "mastery of a particular subject."
Hence, when a layperson  unaccustomed with the varied and nuanced definitions that the law places upon the term "expert"  sees or hears that a particular attorney is an "expert" in a field of law for which the layperson desires representation, that layperson is likely to labor under the misconception that the advertising attorney is a "master" or a preeminent mind in the particular field. That, however, *769 may not always or even often be the case, as demonstrated by the efforts of many of these so-called experts to exhibit their purported "expertise." Further, the certification standards for many fields are not overly intensive. For example, one may become a board-certified appellate attorney in Florida by completing the following requirements: (1) practicing law for at least five years; (2) substantially and directly focusing thirty percent of one's practice on appellate law for the three-year period preceding application (requirement subject to waiver of up to two years); (3) having sole or primary responsibility for five appellate oral arguments during the five-year period preceding application (requirement subject to waiver in "particular instances" for good cause); (4) obtaining forty-five hours of approved appellate-practice continuing legal education ("CLE") credits during the three-year period preceding application; (5) submitting judicial and collegial references; and (6) passing the appellate-practice examination. See R. Regulating Fla. Bar 6-13.3. Does such certification really mean that a newly minted board-certified appellate attorney is a "master," "expert," or preeminent practitioner in terms of practicing before Florida's appellate courts, a federal Circuit Court of Appeals, or before the United States Supreme Court? I think not. This type of certification may, however, mean that the board-certified appellate attorney "specializes" in appellate law.
In sum, leading members of the public to believe that they are purchasing the legal representation of an "expert" is deceptive because use of that hyperbolic term suggests that the "expert" attorney is better able to obtain a desirable result for the client due to their "master" status. This intimation regarding the quality of an attorney's potential services is not necessarily accurate or verifiable. I agree with the notion that "advertising claims as to the quality of services . . . are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction." Bates, 433 U.S. at 383-84, 97 S.Ct. 2691 (emphasis supplied); see also Zauderer, 471 U.S. at 641 n. 9, 105 S.Ct. 2265. This Court should never allow attorneys to make these unverifiable, qualitatively based claims, which ensnare inexperienced consumers of legal services. This is particularly true where, as here, there has not been an expansive discussion of the subject prior to the adoption of the amended Bar rules. Therefore, I would refuse to adopt the permissive stance of the majority.
THE MAJORITY'S APPROACH IS INCONSISTENT WITH THE MAJORITY OF JURISDICTIONS AND WITH FLORIDA'S REGULATION OF BOARD-CERTIFIED PHYSICIANS.
Thirty-seven United States jurisdictions and the American Bar Association do not include the term "expert" in their field-of-practice and attorney-specialization rules.[4] *770 Furthermore, at least three jurisdictions indirectly reference the term "expertise," but refer to field-certified attorneys as "specialists."[5] Thus, the overwhelming majority approach is to label this classification of attorneys "specialists," not "experts." Florida's consumers of legal services may take little solace in the fact that the majority of jurisdictions reject the approach adopted today and, instead, support labeling board-certified attorneys "specialists," rather than "experts." Nevertheless, this fact buttresses my view that the term "specialist" was  and is  more than up to the task of differentiating board-certified attorneys from their noncertified colleagues, without the need for resorting to the "assistance" of the grandiose and deceptive term "expert." Board-certified specialists do not need an ever-expanding palette of superlatives with which to hawk their wares; "specialist" suffices.
Additionally, in Florida, the professionals that attorneys are most often compared with  physicians  are not permitted to call themselves board-certified "experts." Section 458.3312, Florida Statutes, states that
[a] physician licensed under this chapter may not hold himself or herself out as a board-certified specialist unless the physician has received formal recognition as a specialist from a specialty board of the American Board of Medical Specialties or other recognizing agency approved by the board. However, a physician may indicate the services offered and may state that his or her practice is limited to one or more types of services when this accurately reflects the scope of practice of the physician.
§ 458.3312, Fla. Stat. (2007) (emphasis supplied). The differences between these two professions most assuredly do not warrant permitting board-certified attorneys to call themselves "experts," while prohibiting board-certified doctors from doing the same. This point bears repeating: use of the term "specialist" is sufficient to distinguish board-certified professionals from their noncertified colleagues. Accordingly, I dissent from the majority's decision to bestow upon some of Florida's attorneys a cumulative and deceptive accolade of professed distinction  so-called "expert" status.
BELL, J., concurring in part and dissenting in part.
I would adopt The Florida Bar's proposed amendments without exception.
ANSTEAD, J., concurs.

*771 APPENDIX

4-7. INFORMATION ABOUT LEGAL SERVICES

RULE 4-7.1 GENERAL
(a) Permissible Forms of Advertising. Subject to all the requirements set forth in this subchapter 4-7, including the filing requirements of rule 4-7.7, a lawyer may advertise services through public media, including but not limited to: print media, such as a telephone directory, legal directory, newspaper or other periodical; outdoor advertising, such as billboards and other signs; radio, television, and computer-accessed communications; recorded messages the public may access by dialing a telephone number; and written communication in accordance with rule 4-7.4.
(b) Advertisements Disseminated in Florida. Subchapter 4-7 shall apply to lawyers admitted to practice law in Florida who solicit or advertise for legal employment in Florida or who target solicitations or advertisements for legal employment at Florida residents.
(c) Advertisements by Out-of-State Lawyers. Subchapter 4-7 shall apply to lawyers admitted to practice law in jurisdictions other than Florida:
(1) who have established a regular and/or permanent presence in Florida for the practice of law as authorized by other law; and
(2) who solicit or advertise for legal employment in Florida or who target solicitations or advertisements for legal employment at Florida residents.
(bd) Advertisements Not Disseminated in Florida. These rulesSubchapter 4-7 shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the state of Florida.
(e) Communications With Family Members. Subchapter 4-7 shall not apply to communications between a lawyer and that lawyer's own family members.
(f) Communications at a Prospective Client's Request. Subchapter 4-7 shall not apply to communications between a lawyer and a prospective client if made at the request of that prospective client.
(g) Application of General Misconduct Rule. The general rule prohibiting a lawyer from engaging in conduct involving dishonesty, deceit, or misrepresentation applies to all communications by a lawyer, whether or not subchapter 4-7 applies to that communication.

Comment
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public's need to know about legal services can be fulfilled in part through advertising that provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by persons untrained in the law. Such advertising can also adversely affect the public's confidence and trust in our judicial system.
In order to balance the public's need for useful information, the state's need to ensure a system by which justice will be *772 administered fairly and properly, as well as the state's need to regulate and monitor the advertising practices of lawyers, and a lawyer's right to advertise the availability of the lawyer's services to the public, these rules permit public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Regardless of medium, a lawyer's advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, oversized electrical and neon signs, or sound trucks fail to meet these standards and diminish public confidence in the legal system.
These rules do not prohibit communications authorized by law, such as notice to members of a class in class action litigation.
These rules apply to advertisements and written communications directed at prospective clients and concerning a lawyer's or law firm's availability to provide legal services. These rules do not apply to communications between lawyers, including brochures used for recruitment purposes. and their own family members, or communications with a prospective client at that prospective client's request.

RULE 4-7.2 COMMUNICATIONS CONCERNING A LAWYER'S SERVICES
The following shall apply to any communication conveying information about a lawyer's or a law firm's services except as provided in subdivisions (e) and (f) of rule 4-7.1:
(a) Required InformationContent of Advertisements and Unsolicited Written Communications.
(1) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content.
(2) Location of Practice. All advertisements and written communications provided for under these rules shall disclose, by city or town, 1 or more bona fide office locations of the lawyer or lawyers who will actually perform the services advertised. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made. For the purposes of this rule, a bona fide office is defined as a physical location maintained by the lawyer or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis.If an advertisement or written communication lists a telephone number in connection with a specified geographic area other than an area containing a bona fide office, appropriate qualifying language must appear in the advertisement.
(b) Prohibited Statements and Information. Permissible Content of Advertisements and Unsolicited Written Communications. If the content of an advertisement in any public media or unsolicited written communication is limited to the following information, the advertisement or unsolicited written communication is exempt from the filing and review requirement and, if true, shall be *773 presumed not to be misleading or deceptive.
(1) Lawyers and Law Firms. A lawyer or law firm may include the following information in advertisements and unsolicited written communications:
(A) the name of the lawyer or law firm subject to the requirements of this rule and rule 4-7.9, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, website addresses, and electronic mail addresses, office and telephone service hours, and a designation such as "attorney" or "law firm";
(B) date of admission to The Florida Bar and any other bars, current membership or positions held in The Florida Bar or its sections or committees, former membership or positions held in The Florida Bar or its sections or committees with dates of membership, former positions of employment held in the legal profession with dates the positions were held, years of experience practicing law, number of lawyers in the advertising law firm, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(C) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(D) military service, including branch and dates of service;
(E) foreign language ability;
(F) fields of law in which the lawyer practices, including official certification logos, subject to the requirements of subdivision (c)(6) of this rule regarding use of terms such as certified, specialist, and expert;
(G) prepaid or group legal service plans in which the lawyer participates;
(H) acceptance of credit cards;
(I) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (c)(7) and (c)(8) of this rule regarding cost disclosures and honoring advertised fees;
(J) common salutary language such as "best wishes," "good luck," "happy holidays," or "pleased to announce";
(K) punctuation marks and common typographical marks;
(L) an illustration of the scales of justice not deceptively similar to official certification logos or The Florida Bar logo, a gavel, traditional renditions of Lady Justice, the Statue of Liberty, the American flag, the American eagle, the State of Florida flag, an unadorned set of law books, the inside or outside of a courthouse, column(s), diploma(s), or a photograph of the lawyer or lawyers who are members of or employed by the firm against a plain background consisting of a single solid color or a plain unadorned set of law books.
(2) Lawyer Referral Services. A lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
(3) Public Service Announcements. A lawyer or law firm may be listed as a sponsor of a public service announcement *774 or charitable, civic, or community program or event as long as the information about the lawyer or law firm is limited to the permissible content set forth in subdivision (b)(1) of this rule.
(c) Prohibitions and General Regulations Governing Content of Advertisements and Unsolicited Written Communications.
(1) Statements About Legal Services. A lawyer shall not make or permit to be made a false, misleading, or deceptive, or unfair communication about the lawyer or the lawyer's services. A communication violates this rule if it:
(A) contains a material misrepresentation of fact or lawor omits a fact necessary to make the statement considered as a whole not materially misleading;
(B) is false or misleading;
(C) fails to disclose material information necessary to prevent the information supplied from being false or misleading;
(D) is unsubstantiated in fact;
(E) is deceptive;
(BF) contains any reference to past successes or results obtainedor is otherwise likely to create an unjustified expectation about results the lawyer can achieve except as allowed in the rule regulating information about a lawyer's services provided upon request;
(G) promises results;
(CH) states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law;
(DI) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or
(EJ) contains a testimonial.
(2) Misleading or Deceptive Factual Statements. Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under this rule shall not:
(A) be directly or impliedly false or misleading;
(B) be potentially false or misleading;
(C) fail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading;
(D) be unsubstantiated in fact; or
(E) be unfair or deceptive.
(32) Descriptive Statements. A lawyer shall not make statements describing or characterizing the quality of the lawyer's services in advertisements and unsolicited written communications; provided that this provision shall not apply to information furnished to a prospective client at that person's request or to information supplied to existing clients.
(43) Prohibited Visual and Verbal Portrayals and Illustrations. VisualA lawyer shall not include in any advertisement or unsolicited written communication any visual or verbal descriptions, depictions, illustrations, or portrayals of persons, things, or events shall not bethat are deceptive, misleading, or manipulative, or likely to confuse the viewer.
(54) Advertising Areas of Practice. A lawyer or law firm shall not advertise for legal employment in an area of practice in which the advertising lawyer or law firm does not currently practice law.
(65) Stating or Implying Florida Bar Approval. A lawyer or law firm shall not make any statement that directly or impliedly indicates that the communication has received any kind of approval from The Florida Bar.
*775 (c) General Regulations Governing Content of Advertisements.
(1) Use of Illustrations. Illustrations used in advertisements shall contain no features that are likely to deceive, mislead, or confuse the viewer.
(2) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of subdivision (c)(3) of this rule.
(36) Communication of Fields of Practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is "certified," "board certified," or a "specialist," or an "expert" except as follows:
(A) Florida Bar Certified Lawyers. A lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, may inform the public and other lawyers of the lawyer's certified areas of legal practice. Such communications should identify The Florida Bar as the certifying organization and may state that the lawyer is "certified," "board certified," or a "specialist in (area of certification)," or an "expert in (area of certification)."
(B) Lawyers Certified by Organizations Other Than The Florida Bar or Another State Bar. A lawyer certified by an organization other than The Florida Bar or another state bar may inform the public and other lawyers of the lawyer's certified area(s) of legal practice by stating that the lawyer is "certified," "board certified," or a "specialist in (area of certification)," or an "expert in (area of certification)" if:
(i) the organization's program has been accredited by The Florida Bar as provided elsewhere in these Rules Regulating The Florida Bar; and,
(ii) the member includes the full name of the organization in all communications pertaining to such certification.
(C) Certification by Other State Bars. A lawyer certified by another state bar may inform the public and other lawyers of the lawyer's certified area(s) of legal practice and may state in communications to the public that the lawyer is "certified," "board certified," or a "specialist in (area of certification)," or an "expert in (area of certification)" if:
(i) the state bar program grants certification on the basis of standards reasonably comparable to the standards of the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, as determined by The Florida Bar; and,
(ii) the member includes the name of the state bar in all communications pertaining to such certification.
(47) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and unsolicited written communication that contains information about the lawyer's fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.
(58) Period for Which Advertised Fee Must Be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored *776 for no less than 1 year following publication.
(69) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.104-7.9.
(10) Language of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this subchapter must appear in each language used in the advertisement or direct mail communication.
(11) Appearance of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must be clearly legible if written or intelligible if spoken aloud.
(712) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm. Rule 4-1.5(f)(4)(D) (regarding the division of contingency fees) is not affected by this provision even though the lawyer covered by rule 4-1.5(f)(4)(D)(ii) advertises.
(813) Referrals to Another Lawyer. If the case or matter will be referred to another lawyer or law firm, the communication shall include a statement so advising the prospective client.
(914) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
(10) Language of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this subchapter must appear in each language used in the advertisement or direct mail communication.
(11) Appearance of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must be clearly legible if written or intelligible if spoken aloud. If the words or statements appear in text, then the text also must be no smaller than one-quarter the size of the largest type otherwise appearing in the advertisement.
(12) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of subdivision (b)(1) of this rule:
(A) subject to the requirements of this rule and rule 4-7.10, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, website addresses, and electronic mail addresses, office and telephone service hours, and a designation such as "attorney" or "law firm";
(B) date of admission to The Florida Bar and any other bars, current membership or positions held in The Florida Bar, its sections or committees, former membership or positions held in The *777 Florida Bar, its sections or committees, together with dates of membership, former positions of employment held in the legal profession, together with dates the positions were held, years of experience practicing law, number of lawyers in the advertising law firm, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(C) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(D) foreign language ability;
(E) fields of law in which the lawyer practices, including official certification logos, subject to the requirements of subdivisions (c)(2) and (c)(3) of this rule;
(F) prepaid or group legal service plans in which the lawyer participates;
(G) acceptance of credit cards;
(H) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (c)(4) and (c)(5) of this rule;
(I) a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event;
(J) common salutary language such as "best wishes," "good luck," "happy holidays," or "pleased to announce";
(K) an illustration of the scales of justice not deceptively similar to official certification logos or The Florida Bar logo, a gavel, or traditional renditions of Lady Justice, or a photograph of the head and shoulders of the lawyer or lawyers who are members of or employed by the firm against a plain background consisting of a single solid color or a plain unadorned set of law books; and
(L) a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.

Comment
This rule governs all communications about a lawyer's services, including advertising permitted by this subchapter. Whatever means are used to make known a lawyer's services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with this rule, where a lawyer implies that any court, tribunal, or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm that states that all the firm's lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although this rule permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that the lawyer is a member *778 of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter 2 examples of misleading omissions also are examples of unfair advertising.
Prohibited information
The prohibition in subdivision (b)(1)(B)(c)(1)(F) of statements that may create "unjustified expectations" precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in subdivision (b)(1)(D)(c)(1)(I) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that the lawyer or the lawyer's law firm is "the best," "one of the best," or "one of the most experienced" in a field of law.
The prohibition in subdivision (b)(1)(E)(c)(1)(J) precludes endorsements or testimonials, whether from clients or anyone else, because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
Subdivision (b)(4)(c)(3) prohibits visual or verbal descriptions, depictions, or portrayals, or illustrations in any advertisement which create suspense, or contain exaggerations or appeals to the emotions, call for legal services, or create consumer problems through characterization and dialogue ending with the lawyer solving the problem. Illustrations permitted under Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626 (1985), are informational and not misleading, and are therefore permissible. As an example, a drawing of a fist, to suggest the lawyer's ability to achieve results, would be barred. Examples of permissible illustrations would include a graphic rendering of the scales of justice to indicate that the advertising attorney practices law, a picture of the lawyer, or a map of the office location.
Communication of fields of practice
This rule permits a lawyer or law firm to indicate areas of practice in communications about the lawyer's or law firm's services, such as in a telephone directory or other advertising, provided the advertising lawyer or law firm actually practices in those areas of law at the time the advertisement is disseminated. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar, by another state bar with comparable standards, or an organization accredited by The Florida Bar may be described to the public as a "specialist" or as "specializing," "certified," "board certified," being an "expert" or having "expertise in," or any variation of similar import. A lawyer may indicate that the lawyer concentrates in, focuses on, or limits the lawyer's practice to particular areas of practice as long as the statements are true.
Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance *779 with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.114-7.10. Subdivision (c)(9)This rule does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
Required disclosures
Required disclosures would be ineffective if they appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus the type size to be used for required disclosures is specified to ensure that the disclosures will be conspicuous. Thus, required information must be legible if written or intelligible if spoken aloud to ensure that the recipient receives the information.

RULE 4-7.3 ADVERTISEMENTS IN THE PUBLIC PRINT MEDIA
(a) Generally. Advertisements disseminated in the public print media are subject to the requirements of rule 4-7.2.
(b) Disclosure Statement. Except as otherwise provided in this subdivision, all advertisements other than lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience." Lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer's qualifications and experience." Outdoor advertisements may contain, in lieu of the above disclosure, the following abbreviated version: "Before choosing a lawyer, ask for written information about the lawyer's legal qualifications and experience." These disclosures, however, need not appear in advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (c)(12) of rule 4-7.2, or written communications sent in compliance with rule 4-7.4.

Comment
The disclosure required by this rule is designed to encourage the informed selection of a lawyer. A prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client.

RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) Solicitation. Except as provided in subdivision (b) of this rule, a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer's behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term "solicit" includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes (i) any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule, *780 and (ii) any electronic mail communication directed to a specific recipient and not meeting the requirements of subdivision (c) of rule 4-7.6.
(b) Written Communication Sent on an Unsolicited Basis.
(1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer's behalf or on behalf of the lawyer's firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer's firm, an unsolicited written communication directly or indirectly to a prospective client for the purpose of obtaining professional employment if:
(A) the written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than 30 days prior to the mailing of the communication;
(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
(C) it has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
(E) the communication contains a false, fraudulent, misleading, or deceptive, or unfair statement or claim or is improper under subdivision (b)(1)(c)(1) of rule 4-7.2; or
(F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
(A) Written communications to a prospective client are subject to the requirements of rule 4-7.2.
(B) The first page of such written communications shall be plainly marked "advertisement" in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red "advertisement" mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the "advertisement" mark in red ink shall appear on the address panel of the brochure or pamphlet and on the inside of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the "advertisement" mark.
(C) A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be filed with the standing committee on advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.7. The lawyer also shall retain a copy of each written communication for 3 years. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and *781 addresses of persons to whom the written communication was sent.
(DC) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
(ED) Every written communication shall be accompanied by a written statement detailing the background, training and experience of the lawyer or law firm. This statement must include information about the specific experience of the advertising lawyer or law firm in the area or areas of law for which professional employment is sought. Every written communication disseminated by a lawyer referral service shall be accompanied by a written statement detailing the background, training, and experience of each lawyer to whom the recipient may be referred.
(FE) If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size 1 size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.
(GF) The first sentence of any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall be: "If you have already retained a lawyer for this matter, please disregard this letter."
(HG) Written communications shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
(IH) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, any written communication concerning a specific matter shall include a statement so advising the client.
(JI) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication. The disclosure required by this rule shall be specific enough to help the recipient understand the extent of the lawyer's knowledge regarding the recipient's particular situation.
(KJ) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client's legal problem.

Comment
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer's own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the 30-day restriction, particularly since lawyer advertising *782 permitted under these rules offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client's judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and perhaps cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action that relate to an accident, disaster, death, or injury, but only if mailed at least 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses that experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes must be clearly marked "advertisement." This will avoid the recipient's perceiving that there is a need to open the envelope because it is from a lawyer or law firm, only to find the recipient is being solicited for legal services. With the envelope and letter marked "advertisement," the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient's particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient's matter if the lawyer does not. The lawyer or law firm must disclose sufficient information or explanation to allow the recipient to locate for himself or herself the information that prompted the communication from the lawyer.
This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement that the lawyer or the lawyer's law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, *783 it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under other rules in this subchapter.
RULE 4-7.5 ADVERTISEMENTS IN THE ELECTRONIC MEDIA OTHER THAN COMPUTER-ACCESSED COMMUNICATIONS
(a) Generally. With the exception of computer-based advertisements (which are subject to the special requirements set forth in rule 4-7.6), all advertisements in the electronic media, including but not limited to television and radio, are subject to the requirements of rule 4-7.2.
(b) Appearance on Television or Radio. Advertisements on the electronic media such as television and radio shall conform to the requirements of this rule.
(1) Prohibited Content. Television and radio advertisement shall not contain:
(A) any feature that is deceptive, misleading, manipulative, or that is likely to confuse the viewer;
(B) any spokesperson's voice or image that is recognizable to the public; or
(C) any background sound other than instrumental music.
(2) Permissible Content. Television and radio advertisements may contain:
(A) images that otherwise conform to the requirements of these rules; or
(B) a non-attorney spokesperson speaking on behalf of the attorneylawyer or law firm, as long as the spokesperson is not a celebrity recognizable to the public. If a spokesperson is used, the spokesperson shall provide a spoken disclosure identifying the spokesperson as a spokesperson and disclosing that the spokesperson is not an attorneya lawyer.

Comment
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public's confidence in the legal profession and this country's system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
This rule is designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and to encourage the provision of useful information to the public about the availability and terms of legal services. Thus, the rule allows lawyer advertisements in which a *784 lawyer who is a member of the advertising firm personally appears to speak regarding the legal services the lawyer or law firm is available to perform, the fees to be charged for such services, and the background and experience of the lawyer or law firm. The prohibition against false, misleading, or manipulative advertising is intended to preclude, among other things, the use of scenes creating suspense, scenes containing exaggerations, or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. Although dialogue is not necessarily prohibited under this rule, advertisements using dialogue are more likely to be misleading or manipulative than those advertisements using a single lawyer to articulate factual information about the lawyer or law firm's services.
A firm partner or shareholder, of course, is a "member" of a law firm within the intent of the rule; likewise, a lawyer who is a law firm associate as defined in The Florida Bar v. Fetterman, 439 So.2d 835 (Fla.1983) is a firm "member." Whether other lawyers are "members" of a firm for purposes of this rule must be evaluated in light of criteria that include whether the lawyer's practice is physically located at the firm and whether the lawyer practices solely through the firm. There should be a presumption that lawyers other than partners, shareholders, or associates are not "members" of a law firm for purposes of this rule.
The prohibition against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles.

RULE 4-7.6 COMPUTER-ACCESSED COMMUNICATIONS
(a) [No change]
(b) [No change]
(1) [No change]
(2) [No change]
(3) are considered to be information provided upon requestand, therefore, are otherwise governed by the requirements of rule 4-7.9.
(c)-(d) [No change]

Comment

[No change]

RULE 4-7.7 EVALUATION OF ADVERTISEMENTS
(a) Filing and Advisory Opinion. Subject to the exemptions stated in rule 4-7.8, any lawyer who advertises services through any public media or through written communications sent in compliance with rule 4-7.4 or 4-7.6(c)on an unsolicited basis to prospective clients shall file a copy of each such advertisement with the standing committee on advertisingThe Florida Bar at its headquarters address in Tallahassee for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (b) of this rule.
(1) Television and Radio Advertisements:
(A) Prior Review of Television and Radio Advertisements. All television and radio advertisements required to be filed for review must be filed at least 15 days prior to the lawyer's first dissemination of the advertisement.
(B) Voluntary Prior Filing. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated *785 television or radio advertisement prior to production of the advertisement by submitting to The Florida Bar a script, a description of any visual images to be used in a television advertisement, and the fee specified in this rule. The voluntary prior submission shall not satisfy the filing and evaluation requirements of these rules, but The Florida Bar shall charge no additional fee for evaluation of the completed advertisement for which a complete voluntary prior filing has been made.
(C) Evaluation of Advertisements. The Florida Bar shall evaluate all advertisements filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The Florida Bar shall complete its evaluation and shall notify the lawyer whether the advertisement is in compliance with subchapter 4-7 within 15 days of receipt of a complete filing. If The Florida Bar does not send any communication to the filer within 15 days of receipt of a complete filing, the advertisement will be deemed approved.
(D) Substantiating Information. Evaluation of television and radio advertisements conducted under this subdivision is limited to determination of compliance with subchapter 4-7 and does not extend to substantiation of factual claims or statements contained in the advertisements. Notice of compliance with subchapter 4-7 does not alter the lawyer's responsibility for the accuracy of factual claims or statements.
(E) Notice of Evaluation; Effect of Use of Advertisement. A lawyer may disseminate a television or radio advertisement upon receipt of notification by The Florida Bar that the advertisement complies with subchapter 4-7. A lawyer who disseminates an advertisement not in compliance with subchapter 4-7, whether the advertisement was filed or not, is subject to discipline and sanctions as provided in these Rules Regulating The Florida Bar.
(F) Reliance on Notice of Compliance. A finding of compliance by The Florida Bar in television and radio advertisements shall be binding on The Florida Bar unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement.
(2) Other Advertisements:
(A) Filing and Review. All other advertisements required to be filed for review must be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication.
(B) Voluntary Prior Filing. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication that is not required to be filed prior to its first use in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (b) of this rule to the standing committee on advertisingThe Florida Bar at least 15 days prior to such dissemination. If the committee The Florida Bar finds that the advertisement complies with these rules, the lawyer's voluntary submission shall be deemed to satisfy the filing requirement set forth in this rule.
(C) Evaluation of Advertisements. The Florida Bar shall evaluate all advertisements and written communications filed with it pursuant to this subdivision for compliance with the applicable rules set forth in this subchapter 4-7. The Florida Bar shall complete its evaluation within 15 days of receipt of a complete filing unless The Florida Bar determines that there is reasonable doubt that the *786 advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the filer within the 15-day period. In the latter event, The Florida Bar shall complete its review as promptly as the circumstances reasonably allow. If The Florida Bar does not send any communication to the filer within 15 days of receipt of a complete filing, the advertisement will be deemed approved. The 15-day evaluation period shall not apply to advertisements that are exempt from the filing requirement as set forth in rule 4-7.8, but The Florida Bar shall complete its review as promptly as the circumstances reasonably allow. A lawyer may not obtain an advisory opinion concerning communications that are not subject to subchapter 4-7 as listed in rule 4-7.1(d) through (f).
(D) Substantiating Information. If requested to do so by The Florida Bar, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
(E) Notice of Noncompliance. When The Florida Bar determines that an advertisement or written communication is not in compliance with the applicable rules, The Florida Bar shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(F) Reliance on Notice of Compliance. A finding of compliance by The Florida Bar shall be binding in a grievance proceeding, unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement.
(b) Contents of Filing. A filing with the committeeThe Florida Bar as required or permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated and is readily capable of duplication by The Florida Bar (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a printed copy of all text used in the advertisement;
(4) an accurate English translation, if the advertisement appears in a language other than English;
(35) a sample envelope in which the written communication will be enclosed, if the communication is to be mailed;
(46) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(57) a fee paid to The Florida Bar, in an amount of $150 for submissions timely filed as provided in subdivision (a), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(c) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within 15 days of receipt *787 of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the filer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the filer within 15 days, the advertisement will be deemed approved.
(d) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
(e) Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(f) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance, but may be offered as evidence.
(gc) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee's The Florida Bar's evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee The Florida Bar at its headquarters address in Tallahassee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $100.
(hd) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertisingThe Florida Bar in accordance with the requirements of rule 4-7.7, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent.

Comment
This rule has a dual purpose: to enhance the court's and the bar's ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules.
Television and radio advertisements are a special form of media requiring special regulation. The unique characteristics of electronic media, including the pervasiveness of television and radio, the numbers of viewers reached by the electronic media, the ease with which these media are abused, the passiveness of the viewer or listener, the short span of usage of individual television and radio advertisements, and the inability of the bar to patrol the airwaves, make the electronic media especially subject to regulation in the public interest. Advertisements in television and radio have short lifespans, sometimes running *788 their course within weeks. Television and radio advertisements can reach thousands of viewers even with one showing. Therefore, review of electronic media prior to its use is justified in electronic media, but may not be appropriate for advertisements in the other media. Upon receiving a complete filing, prior to a television or radio advertisement's first use, The Florida Bar will advise the filing lawyer in writing whether the advertisement complies with subchapter 4-7. The opinion will be binding on The Florida Bar, unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement.
ThisFor all other advertisements required to be filed for review, the rule gives lawyers the option of submitting their advertisements to the committeeThe Florida Bar for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee The Florida Bar will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee'sThe Florida Bar's opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rulesbinding on The Florida Bar in a grievance proceeding. A lawyer who wishes to obtain a safe harbor from discipline can, therefore, submit the lawyer's advertisement and obtain The Florida Bar's opinion prior to disseminating the advertisement. A lawyer who voluntarily files an advertisement is therefore immune from grievance liability unless the advertisement contains a misrepresentation that is not apparent from the face of the advertisement. A lawyer who wishes to be able to rely on the committee'sThe Florida Bar's opinion as demonstrating the lawyer's good faith effort to comply with these rules has the responsibility of supplying the committeeThe Florida Bar with all information material to a determination of whether an advertisement is false or misleading.

RULE 4-7.8 EXEMPTIONS FROM THE FILING AND REVIEW REQUIREMENT
The following are exempt from the filing requirements of rule 4-7.7:
(a) any advertisement in any of the public media, including the yellow pages of telephone directories, that contains neither illustrations nor information other than permissible content of advertisements set forth elsewhere in this subchapterlisted in rule 4-7.2(b).
(b) a brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, permissible content of advertisements listed in rule 4-7.2(b) and the fact of the sponsorship or contribution. In determining whether an announcement is a public service announcement for purposes of this rule and the rule setting forth permissible content of advertisements, the following are criteria that may be considered:
(1) whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(2) whether the announcement contains information concerning the lawyer's or law firm's area of practice, legal background, or experience;
*789 (3) whether the announcement contains the address or telephone number of the lawyer or law firm;
(4) whether the announcement concerns a legal subject;
(5) whether the announcement contains legal advice; and
(6) whether the lawyer or law firm paid to have the announcement published.
(c) a listing or entry in a law list or bar publication.
(d) a communication mailed only to existing clients, former clients, or other lawyers.
(e) any written communications requested by a prospective client.
(fe) professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing or former clients.
(gf) computer-accessed communications as described in subdivision (b) of rule 4-7.6.

Comment
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in this rule and rule 4-7.2. Subdivisions (b)(1)-(6) of this rule respond to the court's concern by setting forth criteria that, while not intended to be exclusive, provide the needed guidance. With the exception of subdivision (b)(3), these criteria are based on factors considered by the court in Doe.

RULE 4-7.9 INFORMATION ABOUT A LAWYER'S SERVICES PROVIDED UPON REQUEST
(a) Generally. Information provided about a lawyer's or law firm's services upon request shall comply with the requirements of rule 4-7.2 unless otherwise provided in this subchapter.
(b) Request for Information by Potential Client. Whenever a potential client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:
(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written (including computer-accessed) information described in subdivision (c) of this rule.
(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.
(3) If it is believed that the client is in need of services that will require that the client read and sign a copy of the "Statement of Client's Rights" as required by these rules, then a copy of such statement shall be furnished contemporaneously with the above information.
(4) If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked "SAMPLE" in red ink in a type size one size larger than the largest type used in the contract and the words "DO NOT SIGN" shall appear on the client signature line.
(5) Notwithstanding the provisions of subdivision (b)(1)(B) of rule 4-7.2, information provided to a potential client in response to a potential client's request may contain factually verifiable statements concerning past results obtained by the lawyer or law firm, if, either alone or in the *790 context in which they appear, such statements are not otherwise misleading.
(c) Information Regarding Qualifications. Each lawyer or law firm that advertises the lawyer's or law firm's availability to provide legal services shall have available in written form for delivery to any potential client:
(1) a factual statement detailing the background, training, and experience of each lawyer or the law firm;
(2) if the lawyer or law firm claims special expertise in the representation of clients in special matters or publicly limits the lawyer's or law firm's practice to special types of cases or clients, written information setting forth the factual details of the lawyer's experience, expertise, background, and training in such matters.
(d) Proof of Statements or Claims. Upon reasonable request by The Florida Bar, a lawyer shall promptly provide proof that any statement or claim made in any advertisement or written communication, as well as the information furnished to a prospective client as authorized or required by these rules, is in compliance with rule 4-7.2.
(e) Disclosure of Intent to Refer Matter to Another Lawyer or Law Firm. A statement and any information furnished to a prospective client, as authorized by subdivision (b) of this rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally retained lawyer or law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered.

Comment
Consumers and potential clients often will find it useful to receive factual, objective information from lawyers who are advertising their availability to handle legal matters. The rule provides that potential clients may request such information and be given an opportunity to review that information without being required to come to a lawyer's office to obtain it. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients having factual information at their disposal for review and comparison.
This rule does not require a lawyer or law firm to provide information concerning the lawyer's or law firm's services when requested if the lawyer or law firm is not interested in representing the person or entity requesting the information.

RULE 4-7.104-7.9 FIRM NAMES AND LETTERHEAD
(a) False, Misleading, or Deceptive. A lawyer shall not use a firm name, letter-head, or other professional designation that violates subdivision (b)(1) is false, misleading, or deceptive as set forth in subdivision (c)(1) of rule 4-7.2.
(b) Trade Names. A lawyer may practice under a trade name if the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise in violation of subdivision (b)(1)false, misleading, or deceptive as set forth in subdivision (c)(1) of rule 4-7.2. A lawyer in private practice may use the term "legal clinic" or "legal services" in conjunction with the lawyer's own name if the lawyer's practice is devoted to providing *791 routine legal services for fees that are lower than the prevailing rate in the community for those services.
(c) Advertising Under Trade Name. A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by subdivision (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer's letterhead, business cards, office sign, and fee contracts, and appears with the lawyer's signature on pleadings and other legal documents.
(d) Law Firm with Offices in More Than 1 Jurisdiction. A law firm with offices in more than 1 jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(e) Name of Public Officer in Firm Name. The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(f) Partnerships and Authorized Business Entities. Lawyers may state or imply that they practice in a partnership or authorized business entity only when that is the fact.
(g) Insurance Staff Attorneys. Where otherwise consistent with these rules, lawyers who practice law as employees within a separate unit of a liability insurer representing others pursuant to policies of liability insurance may practice under a name that does not constitute a material misrepresentation. In order for the use of a name other than the name of the insurer not to constitute a material misrepresentation, all lawyers in the unit must comply with all of the following:
(1) the firm name must include the name of a lawyer who has supervisory responsibility for all lawyers in the unit;
(2) the office entry signs, letterhead, business cards, websites, announcements, advertising, and listings or entries in a law list or bar publication bearing the name must disclose that the lawyers in the unit are employees of the insurer;
(3) the name of the insurer and the employment relationship must be disclosed to all insured clients and prospective clients of the lawyers, and must be disclosed in the official file at the lawyers' first appearance in the tribunal in which the lawyers appear under such name;
(4) the offices, personnel, and records of the unit must be functionally and physically separate from other operations of the insurer to the extent that would be required by these rules if the lawyers were private practitioners sharing space with the insurer; and
(5) additional disclosure should occur whenever the lawyer knows or reasonably should know that the lawyer's role is misunderstood by the insured client or prospective clients.

Comment
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity, or by a trade name such as "Family Legal Clinic." Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm *792 uses a trade name that includes a geographical name such as "Springfield Legal Clinic," an express disclaimer that it is not a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Subdivision (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are "academy" and "institute." Subdivision (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is "A. Aaron Able." Although not prohibited per se, the terms "legal clinic" and "legal services" would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the community for like services.
Subdivision (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs from the firm name under which the lawyer actually practices violates both this rule and subdivision (b)(1)the prohibition against false, misleading, or deceptive communications as set forth in subdivision (c)(1) of rule 4-7.2.
With regard to subdivision (f), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, "Smith and Jones," for that title suggests partnership in the practice of law.
All lawyers who practice under trade or firm names are required to observe and comply with the requirements of the Rules Regulating The Florida Bar, including but not limited to, rules regarding conflicts of interest, imputation of conflicts, firm names and letterhead, and candor toward tribunals and third parties.
Some liability insurers employ lawyers on a full-time basis to represent their insured clients in defense of claims covered by the contract of insurance. Use of a name to identify these attorneys is permissible if there is such physical and functional separation as to constitute a separate law firm. In the absence of such separation, it would be a misrepresentation to use a name implying that a firm exists. Practicing under the name of an attorney inherently represents that the identified person has supervisory responsibility. Practicing under a name prohibited by subsection (f) is not permitted. Candor requires disclosure of the employment relationship on letterhead, business cards, and in certain other communications that are not presented to a jury. The legislature of the State of Florida has enacted, as public policy, laws prohibiting the joinder of a liability insurer in most such litigation, and Florida courts have recognized the public policy of not disclosing the existence of insurance coverage to juries. Requiring lawyers who are so employed to disclose to juries the employment relationship would negate Florida public policy. For this reason, the rule does not require the disclosure of the employment relationship on all pleadings and papers filed in court proceedings. The general duty of candor of all lawyers may be implicated in other *793 circumstances, but does not require disclosure on all pleadings.

RULE 4-7.114-7.10 LAWYER REFERRAL SERVICES
(a) When Lawyers May Accept Referrals. A lawyer shall not accept referrals from a lawyer referral service unless the service:
(1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer;
(2) receives no fee or charge that constitutes a division or sharing of fees, unless the service is a not-for-profit service approved by The Florida Bar pursuant to chapter 8 of these rules;
(3) refers clients only to persons lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida;
(4) carries or requires each lawyer participating in the service to carry professional liability insurance in an amount not less than $100,000 per claim or occurrence;
(5) furnishes The Florida Bar, on a quarterly basis, with the names and Florida bar membership numbers of all lawyers participating in the service;
(6) furnishes The Florida Bar, on a quarterly basis, the names of all persons authorized to act on behalf of the service;
(7) responds in writing, within 15 days, to any official inquiry by bar counsel when bar counsel is seeking information described in this subdivision or conducting an investigation into the conduct of the service or an attorney who accepts referrals from the service;
(8) neither represents nor implies to the public that the service is endorsed or approved by The Florida Bar, unless the service is subject to chapter 8 of these rules; and
(9) uses its actual legal name or a registered fictitious name in all communications with the public.; and
(10) affirmatively states in all advertisements that it is a lawyer referral service.
(b) Responsibility of Lawyer. A lawyer who accepts referrals from a lawyer referral service is responsible for ensuring that any advertisements or written communications used by the service comply with the requirements of the Rules Regulating The Florida Bar, and that the service is in compliance with the provisions of this subchapter.
(c) Definition of Lawyer Referral Service. A "lawyer referral service" is:
(1) any person, group of persons, association, organization, or entity that receives a fee or charge for referring or causing the direct or indirect referral of a potential client to a lawyer drawn from a specific group or panel of lawyers; or
(2) any group or pooled advertising program operated by any person, group of persons, association, organization, or entity wherein the legal services advertisements utilize a common telephone number and potential clients are then referred only to lawyers or law firms participating in the group or pooled advertising program.
A pro bono referral program, in which the participating lawyers do not pay a fee or charge of any kind to receive referrals or to belong to the referral panel, and are undertaking the referred matters without expectation of remuneration, is not a lawyer referral service within the definition of this rule.

Comment
Every citizen of the state should have ready access to the legal system. A person's *794 access to the legal system is enhanced by the assistance of a lawyer qualified to handle that person's legal needs. Many of the citizens of the state who are potential consumers of legal services encounter difficulty in identifying and locating lawyers who are willing and qualified to consult with them about their legal needs. Lawyer referral services can facilitate the identification and intelligent selection of lawyers qualified to render assistance. However, because a potential for abuse exists, the participation of lawyers in referral services must be regulated to ensure protection of the public.
It is in the public interest that a person seeking the assistance of counsel receives accurate information to select or be matched with counsel qualified to render the needed services. Therefore, a lawyer should not participate in a lawyer referral service that communicates misleading information to the public or that directly contacts prospective clients about available legal services in a manner that constitutes impermissible solicitation.
One who avails oneself of legal services is well served only if those services are rendered by a lawyer who exercises independent legal judgment. The division or sharing of a fee risks the creation of an obligation that impairs a lawyer's ability to exercise independent legal judgment. Therefore, the public interest usually compels the ethical prohibition against the division or sharing of fees and that ethical prohibition should likewise apply to the division or sharing of fees with a lawyer referral service. The prohibition does not extend to the lawyer's paying a pre-arranged, fixed-sum participation fee. Furthermore, the prohibition does not apply when the referring agency is a not-for-profit service operated by a bona fide state or local bar association under the supervision of and approved by The Florida Bar in order to ensure that such service fulfills the public-interest purposes of a lawyer referral service and to ensure that the risk of impairment of the lawyer's ability to exercise independent legal judgment is in that circumstance minimal.
It is in the public interest that a person receives legal services only from someone who is qualified to render them. Lawyers should strive to prevent harm resulting from the rendering of legal services by persons not legally qualified to do so. Therefore, a lawyer should not participate in a lawyer referral service that refers clients to persons not lawfully permitted to practice law in Florida when the services to be rendered constitute the practice of law in Florida.
The quasi-institutionalization of legal services by a lawyer referral service implies that the service has screened the qualifications and financial responsibility of its participating lawyers. That implication may be misleading and does not exist when a prospective client directly selects a lawyer at arm's length. Therefore, it is in the public interest that only lawyers who have established a certain amount of financial responsibility for professional liability participate in a lawyer referral service. Accordingly, a lawyer should participate in a lawyer referral service only if the service requires proof of that financial responsibility.
To enable The Florida Bar to fulfill its obligation to protect the public from unethical or other improper conduct by those who practice law in Florida, The Florida Bar must have available to it the identity of all lawyers participating in a lawyer referral service. Therefore, a lawyer should participate in a lawyer referral service only if the service furnishes The Florida *795 Bar with the names of its participating lawyers.
NOTES
[1] While awaiting the report of the special committee, the Court herein deletes an incorrect rule reference in rule 4-7.6(b)(3). This modification is simply to remove an inaccurate cross-reference and is not intended to impact the Bar's study of how to classify or address computer-accessed communications.
[2] I refer to the prior versions of these rules because, in my opinion, the majority has unnecessarily altered these rules today through amendments that needlessly add the term "expert" to board-certified attorneys' arsenal of salutations.
[3] This Court, in In re Florida Bar, 319 So.2d 1 (Fla.1975), amended the Integration Rule of the Florida Bar, and in the process responded to an objection voiced at that time by altering one of the amendments to add language stating that when an attorney designates an area of legal practice, this designation "DOES NOT MEAN that such attorney has been certified by any person or group as an `expert' in any area of law, nor does it mean that such an attorney is any more expert or competent than any other attorney." Id. at 7-8. Likewise, in Florida Bar re Amendment to Rules Regulating the Florida Bar Chapter 6 (Legal Specialization and Education), 548 So.2d 1120, 1121 (Fla.1989), we approved various "legal specialization" rules, but did not approve or reference "expert" status.
[4] See A.B.A. Model R. Prof'l Conduct 7.4; Ala. R. Prof'l Conduct 7.4; Alaska R. Prof'l Conduct R. 7.4; Ariz. R. Prof'l Conduct 7.4; Ark. R. Prof'l Conduct 7.4; Cal. R. Prof'l Conduct 1-400; Colo. R. Prof'l Conduct 7.4 (eff. 01/01/2008); Conn. R. Prof'l Conduct 7.4; Del. R. Prof'l Conduct 7.4; Ga. R. Prof'l Conduct 7.4; Haw. R. Prof'l Conduct 7.4; Idaho R. Prof'l Conduct 7.4; Iowa R. Prof'l Conduct 32:7.4; Kan. R. Prof'l Conduct 7.4; Md. R. Prof'l Conduct 7.4 (does not permit specialization outside of patent law, which is arguably unconstitutional in light of the plurality result in Peel v. Attorney Registration & Disciplinary Comm'n of Ill., 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990) (holding that Illinois' discipline of attorney for truthfully advertising trial-specialist certification violated the First Amendment)); Mich. R. Prof'l Conduct 7.4 (does not specifically address the specialization issue, but permits attorneys to list their fields of practice); Minn. R. Prof'l Conduct 7.4; Miss. R. Prof'l Conduct 7.6; Mo. R. Prof'l Conduct 4-7.4; Neb. R. Prof'l Conduct 7.4; N.H.R. Prof'l Conduct 7.4 (eff. 01/01/2008); N.J.R. Prof'l Conduct 7.4; N.M.R. Prof'l Conduct 16-704; N.Y.Code of Prof'l Responsibility DR-2-105; N.D.R. Prof'l Conduct 7.4; Ohio R. Prof'l Conduct 7.4; Okla. R. Prof'l Conduct 7.4; Pa. R. Prof'l Conduct 7.4; S.D.R. Prof'l Conduct 7.4; Tenn. R. Prof'l Conduct 7.4; Tex. Disciplinary R. Prof'l Conduct 7.04; Utah R. Prof'l Conduct 7.4; Vt. R. Prof'l Conduct 7.4; Va. R. Prof'l Conduct 7.4; W. Va. R. Prof'l Conduct (does not permit specialization outside of patent and admiralty law, which is arguably unconstitutional in light of Peel); Wis. R. Prof'l Conduct 20:7.4; Wyo. R. Prof'l Conduct 7.4; Guam R. Prof'l Conduct 7.4.
[5] See Ind. R. Prof'l Conduct 7.4; Mont. R. Prof'l Conduct 7.4; N.C.R. Prof'l Conduct 7.4. Additionally, Rhode Island only mentions "expert" in a court-mandated disclaimer, not in the substantive portion of its rule; South Carolina only mentions "expert" in a list of prohibited terms; Maine only mentions "expertise" without reference to either "specialist" or "expert"; and Massachusetts only mentions "expert" in the comments to its rule. See R.I.R. Prof'l Conduct 7.4; S.C.R. Prof'l Conduct 7.4; Me.Code of Prof'l Responsibility 3.8; Mass. R. Prof'l Conduct 7.4.