PARIENTE, J.,
dissenting.
Under the new rules, The Florida Bar’s approach is to treat all lawyer communication alike, with the exception of filing and review requirements, whether it be attorney websites, information requested by a prospective client, or traditional forms of advertisement. Although I commend The Florida Bar for its most recent attempt to propose amendments to the advertising rule, I dissent from the one-size-fits-all approach that appears to be the basis for the amendments.
There are two distinct types of lawyer communication that are now subject to the *612 same restrictions and regulations: (1) the traditional forms of paid advertising such as television, radio, and billboards, which as a general rule given the time and space limitations, do not provide a potential client sufficient information from which to make an informed decision; and (2) other forms of communication, such as websites and information requested by a prospective client, which must be affirmatively sought out and have the ability to provide a potential client with an abundance of information.
In my view, the potential harms and dangers presented by traditional advertising require closer oversight, whereas the inclusion of lawyers’ websites and information upon request as part of the lawyer advertising restrictions is unnecessary and has the potential to result in a chilling effect. For these reasons, I would exempt websites and information upon request from advertising restrictions, and I question whether the entire revamped approach to regulating traditional forms of advertising is a beneficial change.
To say the least, the question of how this Court, through The Florida Bar, should address the relatively new technology of websites, electronic mail, and other forms of computer-accessed communication has been a difficult and complex one to resolve. Up to and including the present, the approach to regulation of Internet-based communication has been characterized as “a study in contrasts.” In re Amends. to Rules Regulating Fla. Bar-Rule 4-7.6 (Computer Accessed Communications), 24 So.3d 172, 172 (Fla.2009).[1] On one side of the spectrum is the view that all aspects of attorney websites should be subject to the samé general regulations as other forms of lawyer advertising. On the other side is the view that attorney websites should continue to be exempt from lawyer advertising rules, essentially treating attorney websites as information provided to prospective clients upon request.[2]
*613 Prior to today’s amendments, the advertising restrictions did not apply to communication between a lawyer and a prospective client if made at the client’s request. See R. Regulating Fla. Bar 4-7.1(h) (Communications at a Prospective Client’s Request) (“Subchapter 4-7 shall not apply to communications between a lawyer and a prospective client if made at the request of that prospective client.”). In the past, The Florida Bar, through its advertising regulations, has endeavored to protect the public from false and misleading advertising and guard the justice system and profession from denigration. The Florida Bar had previously regulated advertising by placing restrictions on specific types of advertising that do little more than provide sound bites about the advertising lawyer or law firm rather than useful information to allow the public to make an informed decision about hiring a lawyer or law firm. Information provided upon request of a prospective client did not fall under this category and was therefore exempted.
When this matter was considered in 2009, the proposed rule before the Court represented the Bar’s attempt to strike a middle ground by making all material behind the attorney website homepage fall under the category of information upon request, which was then exempted from regulation. The Bar believed this approach would permit lawyers to provide information behind the homepage about the following, which would otherwise be prohibited under the lawyer advertising rules at the time: (1) statements that characterize the quality of legal services being offered; (2) information regarding past results; and (3) testimonials.
In a decision issued on February 27, 2009, the Court rejected that approach. The Court expressed the view that “the proposed amendments [were] not sufficient to make material behind the homepage fall under the concept of information ‘upon request.’ ” In re Amends. to Rules Regulating Fla. Bar.-Rule 4.-7.6 (Computer Accessed Communications), No. SC08-1181, slip op. at 4 (Fla. Feb. 27, 2009), withdrawn on rehearing, 24 So.3d 172 (Fla.2009). I concurred, explaining that by rejecting the approach, the Court was expressing its belief that “the rule [did not] provide[ ] sufficient protection for the public” and instead “suggested] ways in which a rule could be fashioned to more fully vindicate the necessity for regulation of attorney advertising.” Id. at 10 (Pariente, J., concurring).
The Court proposed what I termed the “two click” alternative, which would have required any individual accessing material behind the homepage to complete at least two steps, or clicks, until information appeared that would be deemed the equivalent of information upon request. Id. After the “two clicks,” the consumer or prospective client would then be able to access the following information otherwise prohibited by the lawyer advertising rules: (1) statements that characterize the quality of the legal services being offered; (2) information regarding past results; and (3) testimonials. Id. The Court also requested that the Bar study and define the term “testimonial.” Id. at 4 n. 2 (majority opinion).
The Bar determined that the Court’s compromise was not acceptable and filed a motion for rehearing, which this Court granted, withdrawing its February 27, 2009, opinion. See In re Amends. to Rules Regulating Fla. Bar—Rule 4-7-6 (Computer Accessed Communications), 24 So.3d at 172. This Court instead held that it intended “for the substantive advertising rules to apply to website advertising and protect the public” and modified rule 4-7.6(b) accordingly. Id. at 174. The Bar *614 then requested that this Court delay enforcement of the lawyer advertising rules with respect to websites, and this Court ultimately stayed enforcement until further order of the Court. See In re Amends. to Rules Regulating Fla. Bar, No. SC08-1181, Order at 1 (Fla. Sup.Ct. order filed Feb. 28, 2011). The Bar commenced further study under the able leadership of Board of Governor member Carl Schwait and proposed the amendments currently before the Court.
Under the new rules, both Internet websites and information upon request are treated as advertising media, but are exempted from the filing and review requirements. See R. Regulating Fla. Bar 4-7.20(e), (g). After this Court adopts the proposed rules, there will no longer be an express exemption such as was found in rule 4-7.1(h) for information upon request. Rather, both websites and information upon request will be subject to the lawyer communication restrictions.
Unlike websites and information upon request, traditional forms of advertising, such as television ads and billboards, present dangers that justified the stricter regulation the Bar had in place. In my view, these forms of lawyer advertising have changed the face of the legal profession and that change has not been a positive one. To determine the extent to which lawyer advertising was adversely affecting the administration of justice, research commissioned by The Florida Bar Task Force on Lawyer Advertising in 1999 found as follows:
[Ljawyer advertising simply does not provide the public with the useful, factual information that it wants and needs in order to make an informed choice about the hiring of a lawyer. Significantly, the data further shows that much lawyer advertising — especially television advertising — lowers the public’s respect for the fairness and integrity of the legal system.
Amends. to Rules Regulating Fla. Bar—Advertising Rules, 762 So.2d 392, 406 (Fla.1999) (Pariente, J., concurring in part and dissenting in part) (quoting The Florida Bar Advertising Task Force Report). In addition, a survey conducted at that time “revealed that 88% of the judges [surveyed] believe that lawyer advertising has adversely affected the public’s confidence in the administration of justice, and virtually all of those judges (95%) believe that the effect of lawyer advertising was a negative one.” Id. at 406 n. 8. Despite our best efforts to regulate lawyer advertising, we have lawyers’ advertisements on the sides of buses, the tops of taxis, and the backs of benches.
I question the approach to change the restrictions on traditional forms of advertising, which may be seen as a dilution of the regulations previously in place. Although I am pleased that the term “testimonials” is now defined, I have doubts about permitting the use of testimonials in traditional forms of advertising. I question whether a television ad, for example, can ever present past results or testimonials in a non-misleading fashion given the limited amount of information that can be conveyed through that medium.
In contrast to the surveys about the effects on the public of traditional lawyer advertising, there is absolutely no evidence that lawyers’ websites have contributed to the decline in the way the public views lawyers — or been the subject of abuse by the thousands of lawyers who utilize websites. It is clear from the date of these surveys that websites were not considered. Rather, a well-done and comprehensive website could give a potential client an abundance of meaningful information from which to make a decision as to that particular lawyer or law firm.
*615 Simply stated, the prevalence of attorney websites, which can be available to lawyers without the kind of expenditures that are typical of those firms that advertise on television, has most of the benefits and none of the hazards that are endemic to advertisements on television, radio, billboards, buses, taxis, and benches. A lawyer or law firm’s use of a website allows for the conveyance of complete and meaningful information to potential clients, unlike the shorthand versions seen in the other media. Exempting websites from the attorney advertising regulations, similar to how information upon request was treated prior to these amendments, is far more in keeping with exactly what the websites provide.[3]
With respect to websites, I would adopt the view of some of the commentators, which include several of the state’s major law firms that have a national presence. They have argued that websites by lawyers should not be regulated as lawyer advertising.[4] Rather, websites are far more similar to information upon request because a potential client must affirmatively search for the information. This approach, of course, still comes with the overriding caveat that the website must be truthful and not misleading.
If a lawyer or law firm’s website contains false information, the Bar clearly has the power to sanction that conduct since all lawyer communication remains subject to the general prohibition against conduct involving dishonesty, fraud, deceit, or misrepresentation. See R. Regulating Fla. Bar 4 — 8.4(c) (Misconduct).[5] Therefore, if the information contained on the website is false or deceitful, the Bar is not powerless to sanction that attorney for such misconduct.
In sum, I do not agree with the overall approach taken under the new rules to lessen restrictions on traditional forms of advertising and to lump all methods of lawyer communication together, with the exception of filing and review requirements. Advertising such as billboards and television ads present dangers that websites and information provided upon request of a prospective client do not.
Accordingly, I respectfully dissent.

. See id. at 172 n. 2 ("Before submitting previous proposed amendments to the Court for consideration, see In re Amendments to the Rules Regulating the Florida Bar—Advertising, 971 So.2d 763 (Fla.2007), the Task Force originally concluded that websites are distinguished from general advertising because the typical viewer would not access a lawyer’s website by accident, but would be searching for that lawyer, a lawyer with similar characteristics, or information regarding a specific legal topic. In contrast, the Board of Governors’ Citizen's Forum disagreed with the Task Force and concluded that attorney websites should be subject to the same general regulations as other forms of lawyer advertising. The Citizen's Forum reasoned that for website advertising, the public should be provided with the same protections (from false and misleading attorney advertising) that are required for more traditional methods of advertising. Thereafter, the Board voted to continue regulating websites pursuant to the general advertising regulations, except for a few specified exceptions. Afterwards, through its study, the Special Committee determined that each substantive attorney advertising regulation should apply to attorney websites, and that websites should be subject to the same regulation as other forms of media, except that websites should be exempt from the requirement that advertisements must be filed with the Bar for review. However, in December 2006, the Board voted against adopting the Special Committee's recommendation that all substantive lawyer advertising rules apply to lawyer websites.”).

. See R. Regulating Fla. Bar 4-7.6(b) ("All World Wide Web sites accessed via the Internet that are controlled or sponsored by a lawyer or law firm and that contain information concerning the lawyer’s or law firm’s services ... (3) are considered to be information provided upon request.”); see also R. Regulating Fla. Bar 4-7.6 cmt. ("[Á] lawyer's Internet web site is accessed by the viewer upon the viewer’s initiative and, accordingly, the standards governing such communications correspond to the rules applicable to information provided to a prospective client at the prospective client's request.”).

. Of course, if a lawyer or law firm uses impermissible methods to manipulate its placement on a web-based search, that practice should be specifically prohibited by the Bar.

. See, e.g., In re Amends. to Rules Regulating Fla. Bar, SCI 1-1327, Comment of Eight Law Firms at 18 (filed Aug. 4, 2011) (urging this Court to "adopt a rule specifying that websites are communication upon the request of a client or prospective client and not subject to Rule 4 — 7”); In re Amends. to Rules Regulating Fla. Bar, SCI 1-1327, Additional Comment of Carlton Fields, P.A., and Bilzin Sumberg Bae-na Price & Axelrod LLP at 5 (filed Aug. 4, 2011) ("We continue to believe that the preferred rule is the present rule that treats websites — which a potential client after all must find and choose to search — should be treated as information sought by the client. The requirement that statements on the website be truthful and not misleading is already a given.”).

.Before today’s amendments, rule 4-7 expressly provided that the general misconduct rule applied regardless of whether the advertising rules applied. See R. Regulating Fla. Bar 4 — 7.1 (i) (Application of General Misconduct Rule) (stating that the "general rule prohibiting a lawyer from engaging in conduct involving dishonesty, deceit, or misrepresentation applies to all communications by a lawyer,” regardless of whether the advertising rules apply).